IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VANESSA SAENZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:18-cv-01401 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| LRC RESTUARANT NASHVILLE, ) | |
| LLC, ) | |
| ) | |
| Defendant. | |

### **MEMORANDUM OPINION**

Before the Court is Defendant LRC Restaurant Nashville, LLC's Motion for Summary Judgment (Doc. No. 19), supported by an accompanying brief (Doc. No. 21). Plaintiff filed a response (Doc. No. 23), and Defendant replied (Doc. No. 25). For the reasons stated below, Defendant's motion will be granted.

### **UNDISPUTED FACTS[1]**

Plaintiff is a member of a group called "Stepping Out Social Dance Meetup," which uses Facebook to organize meetups of its members at different venues for the purpose of socializing and dancing. (Doc. No. 24 at ¶ 4). Plaintiff hosted an event for the group that she planned to take place at FGL House, a venue located downtown Nashville, Tennessee that is operated by Defendant. (*Id*. at ¶¶ 1, 5). Plaintiff named the event "Friday Night Out In NASHVILLE at FGL Dancing Party" and distributed an invitation to the event on Facebook. (*Id*. at ¶ 7). Under "How to find us" she wrote: "On top floor. I will be by the bar on right side of the stage." (*Id*. at ¶ 8).

---

[1] The following facts are deemed to be undisputed by the parties and gleaned from Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. No. 24).

Plaintiff did not notify or make arrangements regarding her disabilities with anyone affiliated with Defendant or FGL House prior to the event. (*Id*. at ¶ 6).

On the night of the event, July 6, 2018, Plaintiff parked at Nissan Stadium, walked across the Cumberland River via the John Siegenthaler Pedestrian Bridge into downtown Nashville. (*Id*. at ¶ 9). Plaintiff then walked to FGL house and arrived about 7:30 p.m. (*Id*. at ¶ 11). Plaintiff walked up the stairs to the third floor of the venue, which has an enclosed section and a patio area. (*Id*. at ¶ 12, Doc. No. 19-3 at 26-27). Plaintiff seated herself at the bar to the right of the stage as indicated in her invitation to the event. (Doc. No. 24 at ¶ 15). Plaintiff danced with members of the group as they arrived. (*Id*. at ¶ 16). Plaintiff then left FGL House and walked to a nearby restaurant to meet a friend. (*Id*.). After dinner, Plaintiff walked back to FGL House and resumed dancing with the group. (*Id*. at ¶ 17).

FGL House employees then began to remove tables and chairs from the floor area to make room for the dance floor. (*Id*. at ¶ 18). Plaintiff returned from the dance floor to find that a staff member had removed her chair from the area. (*Id*. at ¶ 20). Plaintiff retrieved a chair from a storage area, brought it back to the bar, and sat in it. (*Id*. at ¶ 21). A staff member then took the chair away from Plaintiff and moved it off of the dance floor area. (*Id*. at ¶ 22).

On December 28, 2018, Plaintiff filed her Complaint in this Court asserting that Defendant's agents violated her rights under Title III of the American with Disabilities Act by removing the chair she was sitting in on July 6, 2018. (Doc. No. 1). On July 30, 2019, Defendant filed a motion for summary judgment (Doc. No. 19), to which Plaintiff has responded (Doc. No. 23). Thus, this matter is ripe for adjudication.

# **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). The court should view the facts and draw

all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## **ANALYSIS**

Plaintiff asserts that Defendant unlawfully discriminated against her in violation of Title III of the Americans with Disabilities Act ("ADA"). Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182(a). Generally, "[a] person alleging discrimination under Title III must show (1) that she is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." *Abeyta v. Stonecrest Med. Ctr.*, No. 3:18-CV-0386, 2018 WL 3472820, at *3 (M.D. Tenn. July 18, 2018) (citing *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999)).

Defendant argues that it should be granted summary judgment on Plaintiff's claim because, among other reasons,[2] Plaintiff has not adduced evidence that she has a disability within the meaning of the ADA. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A). Under the ADA, "[m]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). To determine whether a disability substantially limits major life activities, courts should compare the person claiming a disability to most people in the general population. *Hostettler*, 895 F.3d at 853. The impairment does not have to prevent, or significantly or severely restrict, a major life activity to be substantially limiting. *Id*.

Effective January 1, 2009, amendments to the ADA (known as the "ADAAA")[3] were enacted to ensure "a broad scope of protection to be available under the ADA" and to reject the "inappropriately high" standards for interpreting the term "substantially limits" created by two Supreme Court decisions: *Sutton v. United Air Lines*, 527 U.S. 471 (1999) and *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002). *See Taylor v. Specialty Rest. Corp.*, No. 2:12-cv-44, 2014 WL 4922942, at *4 (S.D. Ohio Sept. 30, 2014) (quoting ADAAA). However, despite this more lenient standard, "not every impairment will constitute a disability with the meaning [of the ADAAA]." 29 C.F.R. § 1630.2(j)(1)(ii). Additionally, "the ADAAA left untouched the plaintiff's

---

[2] Defendant also argues that it is entitled to summary judgment because (1) Plaintiff seeks only money damages and Title III of the ADA does not permit money damages; and (2) Defendant did not deny Plaintiff a reasonable accommodation. (Doc. No. 21 at 7-9).

[3] ADA Amendments Act of 2008, Pub. L. 110-325, 122. Stat. 3553, § 2 (2008).

burden of proof in a disability case; he still has to prove he has a disability." *Lloyd v. Hous. Auth. of the City of Montgomery, Ala.*, 857 F. Supp. 2d 1252, 1263 (M.D. Ala. 2012) (explaining that the plaintiff still has the burden to prove he has a disability because "[a] contrary rule would require courts to gaze into a crystal ball, put on a white coat, and divine how a given impairment would have affected the plaintiff[.]").

Defendant contends that the undisputed facts in the record demonstrate Plaintiff is not substantially limited in the activity of walking or standing, as she claims to be in her Complaint and response to Defendant's summary judgment motion. It is undisputed that Plaintiff is a member of a social dance group that often meets up at different venues to dance. (Doc. No. 24 at ¶ 4). On the night at issue, it is undisputed that Plaintiff parked at Nissan Stadium, walked over the pedestrian bridge to FGL House (a ten minute walk), danced, walked to a restaurant, walked back to FGL House, and then continued to dance. (*Id*. at ¶¶ 9-12, 16-17). After she left FGL House, she walked to three other venues and continued dancing. (Doc. No. 19-3 at 42-43). Thus, Defendant argues that "Plaintiff's own admissions reveal that she has no substantial limitation to her major life activities[.]" (Doc. No. 21 at 9). The Court concludes that Defendant has met its initial burden to show that absence of a genuine issue of material fact as to whether Plaintiff had a disability, thus shifting the burden of production to Plaintiff.

In response, Plaintiff argues that her deposition testimony establishes that she is disabled because she "testified that she has been diagnosed with several ailments that limit her ability to stand and/or walk and require that she have access to seating." (Doc. No. 23 at 2). Plaintiff does not cite to where in the record this testimony is located, and it is not the Court's job "to root through the record not unlike a pig in search of truffles to uncover any grain of evidence that might support the position of a party that chose to otherwise sit on its hands." *Penn-Daniels, LLC v. Daniels*, No.

07-1282, 2010 WL 431888, at *3 (C.D. Ill. Jan. 28, 2010) (citing *Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009)); *see also Emerson v. Norvartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (noting that "judges are not like pigs, hunting for truffles" that might be buried in the record). Moreover, the Federal Rules of Civil Procedure are clear that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1).

Nevertheless, the Court reviewed Plaintiff's deposition transcript, and Plaintiff's only testimony relating to any limitation caused by Plaintiff's diagnoses is contained to the following:

> Q: Tell me about the circumstances of what you describe in your complaint as your disability, what restrictions do you have? Just tell me a little bit about that.
>
> A: Well, as I said, I have a 10 percent—the VA assigns percentages to your disabilities, so I have 10 percent on my bark, [sic] 10 percent on each knee, that's been on appeal for a long time because of course I feel that's a lot more than 10 percent, but again, I'm in line with hundreds of thousands of other people, so it's—when I started out it started out as a herniated disc, now it's arthritic—arthritic disc or whatever, so it's deteriorating. It deteriorates but they don't increase your rating automatically, so that is what's certified under the VA, so I cannot—you know, I cannot stand for long periods of time, I cannot sit for long periods of time, I cannot lift things that are heavy, but that's what's certified by the VA. I also have the same thing in my neck, but that has not been service-connected, so I have really two disabilities but just one has been certified by the VA. I have been diagnosed with the neck one too, so, you know, it's very difficult for me to stand in one position for a long time.

(Doc. No. 19-3 at 57-58). This appears to be the only evidence in the record that could support that Plaintiff's conditions "significantly limits" her ability to walk and stand.

The Sixth Circuit recently examined the issue of whether a plaintiff proffered enough evidence to demonstrate that she was substantially limited in her major life activities to survive summary judgment. In *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292 (6th Cir. 2019), a nurse sued her former employer alleging discrimination and retaliation in violation of the ADA. 946 F.3d at 295. The nurse asserted that she was disabled under the ADA because of health issues related

7

to her back. *Id*. at 300. The district court held that the nurse had not established that she was substantially limited in performing any major life activities, and therefore was not disabled under the ADA. *Id*. at 298. The nurse appealed, and the Sixth Circuit considered "whether [the nurse] submitted enough evidence to show that she is substantially limited in her ability to walk, stand, lift, or bend." *Id*. at 300. The court then considered all of the nurse's evidence on this point, which included

> her deposition, [wherein she] testified that she did not have a specific limitation on the distance she could walk, the amount of time she could stand, the amount of bending she could do, or the amount of weight she could lift. Instead, she averred that, after an eight-to twelve-hour shift, she had difficulty walking, standing, lifting, and bending. She testified that she was in pain constantly, and her nursing shifts exacerbated the pain. Specifically, she said that she had severe pain in her buttocks and right leg and numbness and tingling in her feet after a shift. . . . Additionally, she testified that she had so much trouble bending over that it was difficult to put on her underwear. [The nurse's] daughter submitted an affidavit in which she stated that [the nurse] did not walk at all or walked with a slight hunch and a pained expression after completing a day of work. [The nurse's] daughter also stated that [the nurse] did not complete household chores that required lifting, bending, or stooping after working.

*Id*. (citations omitted). The Sixth Circuit emphasized that "the term 'substantially limits' is to 'be construed broadly in favor of expansive coverage,'" and reversed the district court's finding, holding that the above-discussed evidence "satisfied [the nurse's] burden of showing that she is disabled." *Id*. at 300-01. In so ruling, the court did not require the nurse to submit medical evidence to demonstrate that she was substantially limited, as the district court had, but found that the descriptive deposition testimony, corroborated by the daughter's affidavit, met this burden. *Id*. at 300.

The Court finds that the case at hand is distinguishable from *Morrissey* in many respects. The nurse's deposition testimony contained detailed descriptions of how her disability limited her life activities. Such details are lacking here with respect to any alleged major life activity

underlying this lawsuit. For example, in her deposition testimony, Plaintiff describes her alleged disability as only preventing her from sitting[4] or standing for "long periods of time"; she fails to elaborate on what she means by "long periods of time." *See Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014) (explaining that "vague" descriptions of restrictions of major life activities are insufficient to constitute evidence showing substantial limitations of major life activities). Beyond this testimony, there is a dearth of evidence in the record providing any details of how Plaintiff's injuries substantially limit any of her major life activities as compared to most people in the general population.[5] *Hostettler*, 895 F.3d at 853. Additionally, in *Morrissey*, the nurse submitted her daughter's affidavit, which corroborated her testimony.[6] In contrast, here, the only evidence as to how Plaintiff's impairment(s) limit her lifestyle is her own conclusory testimony. Therefore, the evidence in *Morrissey*, which the Sixth Circuit found sufficient to meet Plaintiff's burden, was much stronger than the evidence presented by Plaintiff in this case.

Other courts have found summary judgment appropriate under factual circumstances similar to those present. In *Sutherland v. Boehringer-Ingelheim Pharm., Inc.*, 700 F. App'x 955

---

[4] Additionally, Plaintiff's inability to sit for long periods of time is not relevant to this case. Plaintiff's complaint stems from Defendant's alleged action of *denying* her an opportunity to remain seated longer, when she in fact wanted to sit longer. Because Plaintiff's complaint relates to limitations on life activities other than sitting for long periods of time, that particular life activity simply is not relevant in this case. *See Schluter v. Indus. Coils, Inc.*, 928 F. Supp. 1437, 1447 (W.D. Wis. 1996) ("Plaintiff alleges only that defendant removed her from her supervisor position because of her limited eyesight. Thus, plaintiff's evidence of her insulin dependence and her insulin reactions is not relevant to the disability inquiry in this case.").

[5] In her deposition testimony, Plaintiff referred to issues with lifting heavy objects. The ADA defines "lifting" as a major life activity, but Plaintiff's ability to lift appears unrelated to her need to sit down, and thus appears not relevant to her claim. And to the extent that her ability to lift heavy objects could *possibly* be relevant to her need to sit down, Plaintiff does not raise this possibility in any way and certainly does not explain the relevance. In any event, Plaintiff's proffered evidence (*i.e.*, her sparsely detailed deposition testimony) does not meet her burden to show that she is substantially limited in her ability to lift. Additionally, although Plaintiff suggests in her Complaint and response that she is substantially limited in her ability to walk, she provides absolutely no evidence as to how her ability to walk is substantially limited in any way.

[6] One district court held that a plaintiff cannot establish a disability under the ADA by relying on their own testimony because "[i]f we allow [a plaintiff] to establish a disability relying solely on his own testimony, there would be no reasonable limit to a 'disability' under the Disabilities Act." *Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 593 (E.D. Pa. 2019).

(11th Cir. 2017), the Eleventh Circuit affirmed the district court's holding that the plaintiff did not provide sufficient evidence for a reasonable factfinder to infer that she had a disability. 700 F. App'x at 961. The court explained that the plaintiff "only offered her own self-serving testimony and a single unauthenticated physician's report to establish that she is disabled. Although [the plaintiff] referenced certain medical records in her deposition testimony, she did not provide them at the summary judgment stage." *Id*. Therefore, the court found that the plaintiff's testimony did not meet her burden to show that she was substantially limited in any life activity. *Id*.

In *Munoz v. Selig Enterprises, Inc.*, No. 116CV03924MHCJCF, 2018 WL 9440321 (N.D. Ga. July 3, 2018), the plaintiff argued that she had a disability as a result of "serious health issues that would later be diagnosed as uterine fibroids, ovarian cysts, and endometriosis." 2018 WL 9440321 at *6. As to the limiting effects of her disability, the plaintiff provided only her own declaration and deposition testimony, which explained that

> she "suffered extreme pain, exhaustion, sleep interruption, and lack of bodily function control[,]" and that there were days that she could not leave bed or was house bound "because of pain and fatigue."[] She also stated that her condition caused her to "be late due to pain" and "to leave early for my doctor's appointments." [] In her deposition, Plaintiff testified that her health condition prevented her from being on time from work, that she was "immobilized," "sick every day," "unable to move," "insomnia and fatigue," unable to drive, and on at least one occasion, unable to control her digestive functioning.

*Id*. (citations omitted). The court considered this evidence and held that the "[p]laintiff has not adduced evidence that creates an issue of fact with regard to whether she was disabled even under the more relaxed standards of the ADAAA." *Id*. The court explained that the "[p]laintiff's conclusory and vague assertions of severe pain do not explain how her conditions caused the specific pain she contends was limiting." *Id*. Additionally, "the record [did] not reflect how frequently such episodes occurred—if indeed more than once—such that a jury could infer those activities were substantially limited by her symptoms." *Id*. The court found that such "lack of

specificity in the evidence" did not demonstrate how the plaintiff was substantially limited "as compared to most people in the population." *Id*. (citing 29 C.F.R. § 1630.2(j)(ii)).

In consideration of the above referenced authorities, the Court finds that the evidence present in the record is simply not enough to create a genuine issue of fact that Plaintiff is substantially limited in any major life activity. The Court recognizes that it is to take a broad view of what constitutes a disability under the ADA. *Taylor*, 2014 WL 4922942, at *4. One district court has even opined that "the current disability standard under the ADA [is] one of the most plaintiff-friendly standards in all of federal litigation." *Simmons v. Monroe Cnty., Miss.*, No. 1:18-cv-185, 2019 WL 6206978, at 4, ---F. Supp. 3d---, (N.D. Miss. Nov. 21, 2019). Nevertheless, a plaintiff must produce more than a scintilla of evidence to survive summary judgment, and Plaintiff has not done so here. *Rodgers*, 344 F.3d at 595; *see Boike v. Akal Security, Inc.*, No. 2:17-cv-10109, 2019 WL 4747735, at *5 (E.D. Mich. Sept. 30, 2019) ("In response to Akal's motion for summary judgment, Boike bore the burden of presenting some evidence that he was substantially limited from working due to his color-vision deficiency."); *Concepcion v. City of New York*, No. 15 Civ. 2156 (AJP), 2016 WL 386099, at *16 (E.D.N.Y. Jan. 29, 2016) ("As Concepcion has provided almost no description of the substantial limitations her impairments cause, she has not met even the minimal burden of establishing that she is disabled within the meaning of the ADA."). The record evidence of Plaintiff's limitations (*i.e.*, her own deposition testimony) is simply too underdeveloped to support an inference by a reasonable fact finder that she has an "impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

Plaintiff also succinctly argues that she was "regarded as" having a disability because "Plaintiff made it known to the Defendant's agents that she was disabled." (Doc. No. 23 at 2 (citing 42 U.S.C. § 12101(1)(c))). "An individual meets the requirement of 'being regarded as having

such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12101(3)(a). Federal regulations define the phrase "regarded as having an impairment" as

> (i) Has a physical or mental impairment that does not substantially limit major life activities but that is treated by a private entity as constituting such a limitation; (ii) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (iii) Has none of the impairments defined in paragraph (1) of this definition but is treated by a private entity as having such an impairment.

28 C.F.R. § 36.104(4).[7] Again, Plaintiff does not cite record evidence that reveals she informed Defendant's agents of her impairment. Even so, Plaintiff has presented no evidence of what Defendant's agents believed, said, or did that would remotely suggest that Defendant's agents perceived her as having an impairment. And even if she had, she does not establish, as required, that Defendant's agents took some action against her because they perceived her as having an impairment; on the contrary, her complaint is really that they took an action that callously ignored her disability. That is, Plaintiff complains of only one act—the removal of her chair—and claims that it was taken because Defendant's agents had *no concern* for her disability, not because they *perceived* she *had* a disability. This is simply not a regarded-as case, which would apply only to an entirely different fact pattern. Accordingly, the Court finds that Plaintiff has not provided

---

[7] The Sixth Circuit has noted that "[t]he regarded-as-disabled prong of the ADA protects employees who are perfectly able to perform a job, but are rejected . . . because of the myths, fears and stereotypes associated with disabilities." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892–93 (6th Cir. 2016) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)). Additionally, even where an individual meets the definition of "disability" only under the regarded-as prong, an employer need not provide a reasonable accommodation, because "the Sixth Circuit has held that employers do not owe a duty to accommodate an employee who is only regarded as having a disability." *Stinson v. Nissan N. Am., Inc.*, No. 3:18-CV-0145, 2019 WL 6174841, at *9 (M.D. Tenn. Nov. 20, 2019) (quoting *West v. United Parcel Serv., Inc.*, No. 3:10-CV-716-H, 2011 WL 1539792, at *2 (W.D. Ky. Apr. 22, 2011) (internal quotation marks omitted)). Thus, the regarded-as-theory simply makes no sense given Plaintiff's claim: that she was denied a reasonable accommodation because Defendant's agents—far from reacting (inappropriately) to a perceived disability—obtusely disregarded her disability.

evidence from which a jury could reasonably conclude that Defendant or its agents regarded Plaintiff as disabled.

Accordingly, the Court finds, even viewing the facts in the light most favorable to Plaintiff, the non-movant, that Plaintiff has not provided evidence from which a jury could reasonably conclude that she was disabled for purposes of the ADA. Therefore, the Court will grant Defendant's motion and dismiss Plaintiff's ADA claim. *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 624 (7th Cir. 2012) ("Having failed to meet her burden to demonstrate that she was disabled under the ADA, [plaintiff] is not protected by its provisions.").

## **CONCLUSION**

As set forth in detail above, Defendant's Motion for Summary Judgment (Doc. No. 19) will be **GRANTED** and this action will be dismissed.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE